| | |
|---|---|
| NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC. | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )   **ORDER**<br>) |
| CLEAR TECHNOLOGY, INC., AND VERSATA ENTERPRISES, INC., | )<br>)<br>) |
| Defendants. | ) |

This matter is before the Court on the parties' cross motions for summary judgment as to the other's claims [DE 39 & 41], on plaintiff's motion to strike [DE 46], plaintiff's motion to strike defendants' reply [DE 53], and defendants' motion for leave to supplement the summary judgment record [DE 56]. The motions are now ripe for adjudication. For the reasons stated herein, the plaintiff's motion for summary judgment is GRANTED, defendants' motion for summary judgment is DENIED, plaintiff's motion to strike is GRANTED, plaintiff's motion to strike defendants' reply is DENIED, and defendants' motion for leave to supplement the summary judgment record is GRANTED.

## BACKGROUND

The heart of this case is a simple software license dispute. The issue is whether the $20,000 monthly payments called for under Order No. 2 are for support and maintenance of the Tranzax software, or whether they are a licensing fee. Plaintiff, North Carolina Farm Bureau Mutual Insurance Company, Inc. ("NC Farm"), and defendant Clear Technology ("Clear Tech") entered into a software license and maintenance agreement (the "Master Agreement") with an

1

effective date of March 31, 2003. The Master Agreement granted a perpetual license to NC Farm to use Clear Tech's Tranzax software program in return for payment of a license fee. The Master Agreement also provided for optional maintenance and support payments.

NC Farm and Clear Tech agreed to additional orders of Tranzax software after entering into the Master Agreement. At issue here is Order No. 2 which expanded NC Farm's use of Tranzax into "underwriting." Order No. 2 calls for a lump sum payment of $300,000 for a perpetual license to use Tranzax. However, Order No. 2 also lists monthly $20,000 payments under the heading "License Fee." NC Farm maintains that the $20,000 payment is for support and maintenance services that can be cancelled without affecting its license to use Tranzax. Clear Tech maintains that the $20,000 monthly payment is a recurring licensing fee which, if not paid, causes NC Farm to lose the right to use Tranzax for its underwriting business. Order No. 2, effective August 15, 2004 states the following immediately below the commercial terms:

> All capitalized terms not defined in this Order Form have the same meaning as in the Software License Agreement dated May [sic] 31, 2003 (referred to as the "Agreement") This Order Form is subject to and incorporates the terms of the Agreement.

Defendant Versata Enterprises, Inc. ("Versata") acquired Clear Tech in 2008. NC Farm continued to make the $20,000 monthly payment, but became dissatisfied with the support it received from Clear Tech and Versata. On April 5, 2011, Clear Tech made a proposal to replace its existing software platform and its existing support and maintenance programs for all software licensed to NC Farm. NC Farm rejected the proposal for various reasons. After the proposal was rejected, Clear Tech sent a series of emails to NC Farm in reference to Order No. 2 stating that its subscription and support agreement would expire on August 13, 2011. On June 30, 2011 NC Farm responded by email stating that it would not enter into a new subscription and support contract with Clear Tech and that the contract should be allowed to expire. On August 1, 2011,

2

Abhishek Gupta, Chief Operating Officer of Versata sent an email to NC Farm that stated "the current subscription contract [Order No. 2] shall expire on August 18, 2011 and effective that date [NC Farm] shall cease to use the software licensed under this agreement." The email attached a letter from Clear Tech which referenced Order No. 2 and stated a failure to pay the monthly $20,000 fee would be a material breach of Order No. 2 and of the Master Agreement. The letter further stated that if payment were not made then, all licenses granted pursuant to the agreement would be terminated in accordance with section 10(b) of the agreement. NC Farm has paid the $20,000 monthly fee under protest since August 14, 2011.

On January 5, 2012 NC Farm filed a complaint against defendants in Wake County Superior Court. In its complaint, NC Farm seeks a declaratory judgment pursuant to North Carolina General Statutes § 1-253, defining the contractual rights and obligations of both parties under the Master Agreement. NC Farm also seeks recovery of fees it paid to Clear Tech after Clear Tech ceased providing support and maintenance for Tranzax. Defendant filed a timely notice of removal pursuant to 28 U.S.C. § 1447 on March 5, 2012, on the basis of diversity jurisdiction.

Plaintiff filed a motion for summary judgment on January 14, 2013, on the grounds that there are no issues of material fact and that NC Farm is entitled to judgment as a matter of law. Defendant filled a motion for summary judgment on January 14, 2013, on the grounds that the contracts at issue are not ambiguous and therefore there are no material issues of fact and defendants are entitled to judgment as a matter of law. On February 7, 2013, plaintiff filed a motion to strike portions of Michael Tobin's declaration (filed as exhibit J attached to defendants' memorandum in support of their motion for summary judgment) on the grounds that it is inadmissible expert opinion testimony. On March 27, 2013, plaintiff filed a motion to strike

3

the declaration of Geoffry Smyth and Section C of defendants' reply in support of motion for summary judgment on the grounds that it is untimely in contravention of Local Rule 7.1(d). On April 22, 2013, defendants filed a motion for leave to file a supplement summary judgment record (the Smyth declaration). The parties agree that Colorado law governs the interpretation of their contract.

## DISCUSSION

I. THE COURT FINDS ORDER NO. 2 TO BE AMBIGUOUS.

Under Colorado law, the ambiguity of a contract is a question of law for this Court. *Cheyenne Mountain Sch. Dist. No. 12 v. Thompson*, 861 P.2d 711, 715 (Colo. 1993). An ambiguous document is "reasonably susceptible to more than one meaning." *Id.* The Court may consider extrinsic evidence bearing upon the meanings of the written terms, but not the parties' own extrinsic expressions of intent, when determining whether a contract is ambiguous. *Id.* This Court recognized that there was "an ambiguous interaction between the Master Agreement and the subsequent 'Orders'" in its August 17, 2012 order. [DE 26 at 4]. Order No. 2 is ambiguous in that it is not clear, when looking at Order No. 2 and the Master Agreement together, whether the monthly $20,000 fee is meant to be a recurring licensing fee, or a fee for maintenance and support services. This is especially so in light of the email sent on behalf of Clear Tech to NC Farm on August 13, 2011. The email expressed regret that NC Farm had not renewed its support and maintenance contract with Clear Tech, warned that NC Farm "[is] now operating [Clear Tech's] product in an unsupported environment," and cautioned that restarting a maintenance contract could be predicated on paying substantial penalties. This email was sent after Mr. Gupta's emails telling NC Farm that it would not be allowed to operate Tranzax any longer.

4

Even Clear Tech was ambiguous as to what the failure to pay the monthly $20,000 fee would mean. As such, this Court holds Order No. 2 to be ambiguous.

II.     PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.

A motion for summary judgment cannot be granted unless there are no genuine issues of material fact for trial. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party must demonstrate the lack of genuine issue of fact for trial and if that burden is met, the party opposing the motion must "go beyond the pleadings" and come forward with evidence of a genuine factual dispute. *Celotex*, 477 U.S. at 324. The Court must view the facts and the inferences drawn from the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Conclusory allegations are insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.") (emphasis in original).

Colorado law requires that an integrated contract be interpreted in its entirety so that all provisions are given effect and none are left meaningless. *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984). A fundamental rule of contract law is that the Court should discover and give effect to the mutual intent of the parties. *Id.* Although the Court must usually look within the four corners of the contract, "[w]hen an ambiguity is found to exist and cannot be resolved by reference to other contractual provisions, extrinsic evidence must be considered by the [Court] in order to determine the mutual intent of the parties at the time of contracting." *Id.* Parol evidence is admissible to explain or supplement the terms of an agreement, but not to vary or contradict them and a court should only use parol evidence when

5

an agreement is so ambiguous that the intent of the parties is not clear. *Cheyenne* 861 P.2d at 715. Additionally, because "the terms of [the] contract are ambiguous, they must be strictly construed against the party drafting the instrument." *Green Shoe Mfg. Co. v. Farber*, 712 P.2d 1014, 1016 (Colo. 1986).

Here, the contract is ambiguous and the intent of the parties is not clear, so this Court will consider the parol evidence offered by plaintiff. Clear Tech drafted Order No. 2 and therefore this Court will construe the terms of the contract against defendants. NC Farm has offered both parol evidence and extrinsic evidence in the form of emails and affidavits that support its interpretation of the contract as requiring a $300,000 lump sum payment for a perpetual license and monthly $20,000 payments for support and maintenance services.

John Kendall, Clear Tech's Chief Executive Officer at the time Order No. 2 was negotiated and executed corresponded with Linda Squires of NC Farm regarding the terms of Order No. 2. John Kendall emailed Ms. Squires a summarization of their negotiations stating "So for example we will charge $300k, plus $20k per month (for maintenance) for the License to use Tranzax in the Underwriting area/s at NCFB." Ms. Squires responded that he had captured their agreement very well and clarified that the $300,000 was for the entire Underwriting area(s) including the development license. John Kendall confirmed this. These emails are consistent with the Master Agreement which only mentions maintenance fees as separate from licensing fees. The Master Agreement also provides that the maintenance services can be cancelled. Clear Tech does not dispute that John Kendall sent the emails to Ms. Squires on behalf of Clear Tech or that John Kendall had the authority to negotiate the agreement on behalf of Clear Tech at the time the email was sent.

6

The testimony of the principals of both Clear Tech and NC Farm at the time Order No. 2 was negotiated further shows that both parties intended the same agreement – a one-time fee of $300,000 for a perpetual license and monthly maintenance fees of $20,000. Chris Kendall was the Chief Financial Officer of Clear Tech at the time that Order No. 2 was negotiated, and had the authority to do so on behalf of Clear Tech. Chris Kendall executed Order No. 2 on behalf of Clear Tech and Clear Tech admits he had the authority to do so. Both John and Chris Kendall testified in video-taped depositions, that the terms of Order No. 2 provided for a $300,000 lump sum payment for a perpetual license, to use Tranzax for underwriting, and a $20,000 monthly payment for support and maintenance. Despite defendants' efforts to twist their words, John and Chris Kendall's testimony is consistent and aligned with the testimony of Linda Squires and the contentions of NC Farm.

Email communications on behalf of Clear Tech with NC Farm support the reading of the $20,000 monthly payments to be for support and maintenance, not licensing. As August 2011 approached, Clear Tech sent NC Farm notices indicating that their subscription and support agreement with Clear Tech would expire on August 13, 2011. There is no expiration provision regarding licensing in the Master Agreement or Order No. 1, so this reference could have only been applied to maintenance and support. Additionally, defendants sent NC Farm an email on June 29, 2011 that only mentioned one result of the subscription and support agreement expiring – the loss of access to customer support. The August 13, 2011 email sent on behalf of defendants expressed regret that NC Farm opted not to continue their support and maintenance relationship with Clear Tech. It also noted that NC Farm was now operating Tranzax in an unsupported environment. The only communication NC Farm received stating that their license was expiring was the August 1, 2011 email from Mr. Gupta, Chief Operating Officer of Versata.

7

Defendants claim their late-submitted Smyth declaration creates a material issue of fact. However, it does not. Smyth merely outlines the general business model of Clear Tech at the time Order No. 2 was executed. That does not preclude Clear Tech selling NC Farm a perpetual license for a lump sum payment. Defendant has still not offered any evidence that contradicts John and Chris Kendall and Ms. Squires' testimony nor the email contemporaneous email communications.

The testimony and written evidence offered by NC Farm establish the mutual intent of the parties at the time of the execution of Order No. 2 for NC Farm to receive a perpetual license to use the Tranzax software for underwriting upon payment of the $300,000 lump sum licensing fee, and that the $20,000 monthly fee was in exchange for optional maintenance and support services. Defendants have offered no material evidence to dispute these facts and therefore plaintiff has met its burden to receive a summary judgment in its favor. NC Farm received a perpetual license to use the Tranzax Software under Order No. 2 when it paid Clear Tech $300,000 and it has no obligation to continue paying $20,000 per month in order to preserve its license. Furthermore, because NC Farm is not obligated to pay $20,000 per month to maintain its license to use the Tranzax software, and because it has not received any maintenance or support since this dispute arose in return for those payments, NC Farm is entitled to a money judgment in the amount of $500,000 (25 months since August 2011 times $20,000) in addition to all pre-judgment interest recoverable under law. Accordingly, plaintiff's motion for summary judgment is granted.

III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

Defendants argue that because Order No. 2 is unambiguous and states that the $20,000 monthly payment is a license fee that they are entitled to summary judgment. This Court has

8

Case 5:12-cv-00111-BO   Document 61   Filed 09/18/13   Page 8 of 11

found that the agreement is ambiguous (*See infra* Part I) and therefore defendants' argument for summary judgment must fail. Accordingly, defendants' motion for summary judgment is denied.

IV.   PLAINTIFF'S MOTION TO STRIKE [DE 46].

Although the parties agree that Colorado law governs interpretation of the contract, the question of whether or not to allow and consider expert testimony is an evidentiary question that the Federal Rules of Evidence and associated case law control. Expert testimony is generally not admissible to interpret contracts. *Forrest Creek Associates, Ltd. V. McLean Sav. And Loan Ass'n*, 831 F.2d 1238, 1242 (4th Cir. 1987). Plaintiff has adequately shown that the portions of Michael A. Tobin's declaration to which they object are inadmissible expert opinion testimony because they interpret the contract or are irrelevant. The motion is, accordingly, GRANTED, and paragraphs II.B.4, II.B.10, II.C, II.C.11, and II.C.14 should be struck from Tobin's declaration.

V.   PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S REPLY [DE 53].

Defendants violated local rule 7.1(f) by filing the Smyth declaration with their reply memorandum. *See* E.D.N.C. R. 7.1(f). However, because defendants later filed a motion to amend the summary judgment record [DE 56], and the Court has granted that motion (*See supra* Part VI), plaintiff's motion to strike is denied. Defendants adequately explained the reason for their delay in filing. Defendants should be aware that they violated local rule 7.1(f) and should refrain from such a violation in the future. The proper course of action would have been to simply file the motion for leave to supplement the record without mentioning the Smyth declaration in their reply memorandum. Here, however, their violation was harmless. Accordingly, plaintiff's motion to strike is denied.

VI.  DEFENDANT'S MOTION FOR LEAVE TO FILE SUPPLEMENT TO THE SUMMARY JUDGMENT RECORD.

In the absence of a declared or apparent reason such as undue delay or undue prejudice, the leave sought should be freely given. *Ayers v. Peterson*, 130 F. App'x 666, 669 (5th Cir. 2005) (quoting FED. R. CIV. P. 15(a)). In ruling on the parties' motions for summary judgment, the Court should have at its disposal all relevant evidence. Although plaintiff argues that defendants' inclusion of the Smyth declaration is untimely, motivated by bad faith, creates undue prejudice, and is irrelevant, this Court disagrees. Defendants have adequately demonstrated the difficulties they encountered in their quest to obtain the Smyth declaration. Defendants clearly made a good faith effort to obtain the Smyth declaration in a timely manner under the circumstances. It would have been better had defendants used Veronica Riley's aid in obtaining Mr. Smyth's declaration sooner, but no harm is caused by allowing defendants' motion for leave. The Smyth declaration goes to Clear Tech's business model and plans at the time Order No. 2 was executed and is relevant regarding the possible intent of the parties. Accordingly, defendants' motion for leave to file is granted.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment is GRANTED; defendants' motion for summary judgment is DENIED; plaintiff's motion to strike is GRANTED; plaintiff's motion to strike the Smyth declaration is DENIED; and defendants' motion for leave to file supplement to the summary judgment record is GRANTED. Plaintiff's ownership of a perpetual license to use Tranzax in underwriting and its right to continue using the Tranzax software for its underwriting business without paying a monthly fee of $20,000 is

DECLARED. Defendants are ORDERED to pay plaintiff $500,000 and all pre-judgment interest recoverable by law. The clerk is directed to enter judgment accordingly and to close the file.

SO ORDERED.

This the _17_ day of September, 2013.

                            TERRENCE W. BOYLE
                            UNITED STATES DISTRICT JUDGE